# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| LAYMOND V. FLEMING, | ) |
| *Plaintiff*, | ) Case No. 2:25-cv-66 |
| v. | ) Judge Travis R. McDonough |
| OFFICER LAWSON et al., | ) Magistrate Judge Cynthia R. Wyrick |
| *Defendants*. | ) |

## MEMORANDUM OPINION

Plaintiff Laymond V. Fleming, a prisoner incarcerated at the Sullivan County Detention Center ("SCDC") who is proceeding pro se and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983 (Doc. 9), has filed an amended complaint (Doc. 10) that is before the Court for screening under the Prison Litigation Reform Act ("PLRA"), *see* 28 U.S.C. § 1915(e) and § 1915A, to determine whether it states a justiciable claim. For the reasons set forth below, the Court will dismiss the amended complaint for failure to state a claim upon which § 1983 relief may be granted.

I.   **PLRA SCREENING STANDARD**

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)

"governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

To state a claim under § 1983, Plaintiff must establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

## II. PLAINTIFF'S ALLEGATIONS

In June 2024, Officer Miller issued a false disciplinary write-up against Plaintiff for assault. (Doc. 10, at 2.) Officer Miller "took [Plaintiff] to the ground, where he issued closed fist strikes toward [Plaintiff's] face." (*Id.* at 2–3.) Plaintiff "tried to block" the blows. (*Id.* at 3.) Afterward, Plaintiff was placed in an empty room for a while, before Officer Miller and other unidentified officers "ganged [up on] [Plaintiff] and issued knee strikes and fist strikes toward [his] kidneys." (*Id.* at 3.) Officers stated Plaintiff "was faking [his] pain." (*Id.*)

2

Plaintiff was placed in I-cell, where he stayed until he "was jumped by other inmates." (*Id*.) Plaintiff "was then placed in Dayroom B in excruciating pain." (*Id*.) Officers placed another inmate in the cell with Plaintiff, and that inmate threw a pizza tray at Plaintiff and assaulted him. (*Id*.) No one did anything to stop the inmate. (*Id*.) Another inmate "threatened to harm [Plaintiff] if [he] didn't perform a staged hostage situation." (*Id*.) Plaintiff complied and was placed "on watch[,] where [he] was not moved out until [he] was assaulted." (*Id*.)

Plaintiff then sat in "Tank 5" for a few days before he was moved back to Dayroom B. (*Id*.) Later, Lt. Brooks put an inmate from I-cell (the cell "where [Plaintiff] was jumped") in Plaintiff's cell. (*Id*.) And "even though the inmate threatened harm, he was not moved out until he did strike [Plaintiff]" while Plaintiff was lying on a mat. (*Id*.) Plaintiff was then placed in I-cell, presumably on the orders of Lt. Brooks, despite his "pleas for [his] life." (*Id*.) Plaintiff told an unidentified officer that those inmates would kill him, but the unidentified officer threatened Plaintiff. (*Id*.)

Thereafter, Plaintiff faked suicidal ideation to get moved out of I-cell. (*Id*.) Once Plaintiff explained his "situation of danger," they placed Plaintiff in K-cell, where an inmate threw excrement and urine on Plaintiff's side. (*Id*.) Plaintiff told Officer Lawson that "they" would kill him, and Officer Lawson stated that Plaintiff was "death penalty el[]igible anyway." (*Id*.) Plaintiff stayed in the cell for an hour or so and was then placed in a holding cell for approximately three days before being returned to Dayroom B. (*Id*.)

Whenever a cell is designated to give haircuts, they are given an extra breakfast tray as a reward "with no issues." (*Id*.) But Plaintiff has cut hair four times and has never received an extra tray. (*Id*.) Other inmates "with similar charges" to Plaintiff receive extra trays. (*Id*.) In Dayroom A, Plaintiff asked for the extra tray. (*Id*.) But Plaintiff "was ignored and discriminated against for [his] charges[,] and the extra [tray] was given to Dayroom B instead." (*Id*.)

3

After Plaintiff filed his initial complaint, he "was starting to be refused [his] trays" on two occasions. (*Id.*) Plaintiff's trays "were given to someone else[,]" which "starv[ed] [him] for the next 4–5 hours." (*Id.*)

Aggrieved, Plaintiff filed this amended complaint against Lt. Brooks and Officers Lawson and Miller, asking the Court to remove him from "the registry so this discrimination doesn't follow [him] when [he is] released to the public[,]" award him monetary compensation, and/or order "[a] review and modification of practices." (*Id.* at 5.)

## III. ANALYSIS

Although Plaintiff does not expressly state his custodial status in his amended complaint, he does reference his pending "charges." (*See* Doc. 10, at 3.) Accordingly, the Court assumes for screening purposes that Plaintiff is a pretrial detainee, and that the greater protections of the Fourteenth Amendment apply to his claims. *See Lawler as next friend of Lawler v. Hardeman Cnty.*, 93 F.4th 919, 926 (6th Cir. 2024) (noting pretrial detainee's constitutional protections originate from the Due Process Clause); *see also Love v. Franklin Cnty.*, 376 F. Supp. 3d 740, 745 (E.D. Ky. 2019) (finding "the Fourteenth Amendment affords pretrial detainees greater protections than those afforded to convicted prisoners by the Eighth Amendment" (citations omitted)).

Additionally, Plaintiff does not state whether he intends to sue Defendants in their individual capacities, their official capacities, or in both capacities. It appears Plaintiff only seeks relief against Defendants in their individual capacities, as he claims "I don't believe policies have anything to do with it." (Doc. 10, at 2.) However, out of an abundance of caution, the Court will address Plaintiff's claims against Defendants in both capacities.

### A. Official-Capacity Claims

To the extent Plaintiff sues SCDC Officers Brooks, Lawson, and/or Miller in their official capacities, he is suing Sullivan County itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). But to sustain suit against Sullivan County, Plaintiff must allege facts from which this Court could infer that his constitutional rights were violated because of an unconstitutional County policy or custom. *See Monell*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for harms that result from a constitutional violation when that underlying violation resulted from "implementation of its official policies or established customs"). That is, "[P]laintiff must identify the policy, connect the policy to the [County] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation and internal quotation marks omitted).

Here, Plaintiff has not alleged any facts from which the Court could plausibly infer that a custom or policy attributable to Sullivan County caused him any injury. Therefore, all official-capacity claims against Defendants will be dismissed.

### B. Individual-Capacity Claims

To state a claim against any Defendant in his or her individual capacity, Plaintiff must adequately plead that each Defendant, by his or her own actions, has violated the Constitution. *Iqbal*, 556 U.S. at 676; *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted).

5

First, Plaintiff claims Officer Miller issued a false disciplinary report against him [Doc. 10 p. 2]. But this allegation fails to state a colorable claim and will be dismissed. *See Wolff v. McDonnell*, 418 U.S. 539, 564–71 (1974); *Person v. Campbell*, No. 98–5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983.").

Second, Plaintiff claims that Officer Miller "took [Plaintiff] to the ground, where he issued closed fist strikes toward [Plaintiff's] face." (Doc. 10, at 2–3), and that he later, along with other unidentified officers, "ganged [up on] [Plaintiff] and issued knee strikes and fist strikes toward [his] kidneys." (*Id.* at 3.) To adequately allege that Officer Miller's use of force against Plaintiff violated the Fourteenth Amendment, Plaintiff must set forth facts that allow the Court to plausibly infer "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). "The reasonableness of the force turns on the facts and circumstances of the particular case, and '[a] court must make this determination from the perspective of a reasonable [official] on the scene, including what the [official] knew at the time, not with the 20/20 vision of hindsight.'" *Howell v. NaphCare, Inc.*, 67 F.4th 302, 320 (6th Cir. 2023) (citing *Kingsley*, 576 U.S. at 397). Factors that "bear on the reasonableness or unreasonableness of the force used," *Kingsley*, 576 U.S. at 397, include the following:

> [T]the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Howell*, 67 F.4th at 320 (quoting *Kingsley*, 576 U.S. at 397).

Here, Plaintiff does not present sufficient facts to render an unreasonable-use-of-force claim plausible. He does not allege any facts precipitating Officer Miller's use of force, and

6

therefore, he has not alleged any facts that bear on whether force was warranted. Further, there are no well pled facts indicating whether Officer Miller or others perceived Plaintiff to be a threat, or whether any such perception was reasonable. Additionally, Plaintiff has not pled that he suffered any injuries requiring medical attention, and he has not pled any facts indicating whether he was actively resisting or noncompliant on either occasion when force was allegedly used. Accordingly, the facts presented by Plaintiff present only the non-actionable "mere possibility of misconduct," *Iqbal*, 556 U.S. at 679, and not the plausible inference that Defendant Miller's use of force was objectively unreasonable. *See Kingsley*, 576 U.S. at 397. Accordingly, this use-of-force claim will be dismissed for failure to state a claim.[1] *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)).

Third, Plaintiff claims that unnamed officers placed him in various cells where he was "jumped" and threatened. (Doc. 10, at 4.) But Plaintiff does not identify these officers, and, as the Court noted, Defendants may be held liable only for their own actions. Accordingly, these claims will be dismissed.

Fourth, Plaintiff asserts that Lt. Brooks (1) put a threatening inmate from I-cell in Plaintiff's cell in Dayroom B, and that inmate was not moved until he struck Plaintiff, and (2) presumably ordered Plaintiff placed in I-cell following that assault. (Doc. 10, at 4.) The Sixth Circuit has held "that a failure-to-protect claim by a pretrial detainee requires only an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly."

---

[1] The Court notes that by permitting Plaintiff to file an amended complaint, the Court has already provided Plaintiff one opportunity to cure his pleading deficiencies. (*See* Doc. 9.)

*Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022) (citation omitted). Specifically, liability attaches where the defendant officer "[1] act[ed] intentionally in a manner that [2] put[] the plaintiff at a substantial risk of harm, [3] without taking reasonable steps to abate that risk, and [4] by failing to do so actually cause[d] the plaintiff's injuries." *Stein v. Gunkel*, 43 F.4th 633, 639 (6th Cir. 2022) (citing *Westmoreland*, 29 F.4th at 729).

Here, the mere fact that Plaintiff was previously "jumped" in I-Cell does not permit the plausible inference that Lt. Brooks knew, or had reason to know, that any other inmate from I-cell posed a substantial risk to Plaintiff. That is, Plaintiff does not allege any facts from which "a reasonable officer in the circumstances would have appreciated the high degree of risk involved and the obvious consequences" of his conduct. *Westmoreland*, 29 F.4th at 730. And Plaintiff's remaining allegation against Lt. Brooks fails for two reasons. First, Plaintiff does allege any facts to support his assumption that Lt. Brooks was responsible for placing Plaintiff in I-cell after Plaintiff was struck in Dayroom B. And complaints may not rest on conclusory allegations, but rather, "must set forth a factual basis for such belief[.]" *Smith v. Gen. Motors, LLC*, 988 F.3d 873, 885 (6th Cir. 2021). Second, Plaintiff does not allege that he actually suffered any harm when he was placed in I-cell on this occasion, and "[a] § 1983 claim only occurs when the threats or threatened conduct results in a constitutional deprivation." *Branham v. Grinage*, 869 F.2d 1488, 1989 WL 11070, at *1 (6th Cir. Feb. 10, 1989) (citing *Macko v. Byron*, 760 F.2d 95, 97 (6th Cir. 1985).

Fifth, the Court considers Plaintiff's allegation that he told Officer Lawson that "they" would kill him, and Officer Lawson nonetheless left him in a cell for approximately an hour, stating Plaintiff was "death penalty el[]igble anyway" [Doc. 10 p. 4]. This allegation fails to state a plausible claim, as Plaintiff has not alleged any facts indicating that this placement placed

him at a substantial risk of harm, or that he suffered any injuries as a result. *See Stein v. Gunkel*, 43 F.4th at 639.

Next, Plaintiff claims that he has never received an extra breakfast tray for providing haircuts, while other inmates "with similar charges" do receive extra trays. (Doc. 10, at 4.) However, he also alleges that his requests for an extra tray are "ignored" and that he is "discriminated against for [his] charges." (*Id*.) These allegations implicate Plaintiff's right to equal protection. In order to state a viable equal protection claim, "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). Here, Plaintiff maintains both (1) that he is denied an extra tray because of his charges and (2) other inmates with similar charges receive an extra tray. Therefore, he has not presented well pled facts indicating he is treated differently than those who are like him "in all relevant respects." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (noting that the Equal Protection Clause "keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike"). Therefore, this claim will be dismissed.

Finally, Plaintiff maintains that he was refused his meal trays on two occasions, which "starv[ed] [him] for the next 4–5 hours." (Doc. 10, at 4.) Liberally construing Plaintiff's amended complaint, the Court considers whether these allegations state a retaliation claim. A retaliation claim requires a plaintiff to show three things: (1) he "engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements

one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Filing a lawsuit constitutes the exercise of protected conduct. *See, e.g., Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (finding prisoner possesses First Amendment right to file non-frivolous grievances). But the denial of two meal trays is not an "adverse action" within the meaning of the applicable law. *See Ivory v. Bastian*, No. 2:10-cv-299, 2011 WL 766531, at *7 (W.D. Mich. Feb. 25, 2011) (finding the deprivation of an occasional meal in retaliation for grievance activity did not amount to adverse action); *Snyder v. McGinnis*, No. 03-cv-902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) ("But even if the Court were to assume that the denial of food to the plaintiff on two occasions constituted acts of retaliation, the Court finds that the actions complained of were de minimis and not actionable; such actions, even if proven at trial, would not chill a person of ordinary firmness from continuing to engage in First Amendment activity."). Moreover, Plaintiff has not alleged any facts that would permit the plausible inference that he was twice denied meal trays because he filed the instant lawsuit. And "conclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)). Therefore, Plaintiff's allegations fail to state a colorable claim for retaliation. This claim will be dismissed.

## IV. CONCLUSION

As set forth above, none of Plaintiff's claims state a cognizable § 1983 claim. Accordingly, Plaintiff's complaint will be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which § 1983 relief may be granted.

The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT WILL ENTER.**

/s/ *Travis R. McDonough*
**TRAVIS R. MCDONOUGH
UNITED STATES DISTRICT JUDGE**